IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LISA GAY NEW,                          )
                                       )
              Plaintiff,               )
                                       )
       v.                              )        Civil No.  11-1211-JAR
                                       )
MICHAEL J. ASTRUE,                     )
COMMISSIONER OF                        )
SOCIAL SECURITY,                       )
                                       )
              Defendant.               )

## MEMORANDUM AND ORDER

This matter is before the Court for review of the final decision of Defendant Commissioner of Social Security denying Plaintiff Lisa New's applications for disability benefits under Title II of the Social Security Act,[1] and supplemental security income benefits under Title XVI of the Social Security Act.[2]   Upon *de novo* review, the Court affirms the decision of the Commissioner.

**I.      Procedural History**

In 2008, Plaintiff applied for disability benefits with a protective filing date of March 19, 2008.  Plaintiff's applications were denied initially and upon reconsideration.  Plaintiff timely requested a hearing before an administrative law judge ("ALJ").  After a hearing, the ALJ issued a decision finding that Plaintiff was not disabled; the Appeals Council denied plaintiff's request for review of the ALJ's decision.  Plaintiff then timely sought  judicial review before this Court.

---

[1] 42 U.S.C. §§ 401–434.

[2] 42 U.S.C. §§ 1381–1383f.

## II.      Standard for Judicial Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether Defendant's decision is supported by substantial evidence in the record as a whole and whether defendant applied the correct legal standards.[3]  The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4]  In the course of its review, the court may not re-weigh the evidence or substitute its judgment for that of Defendant.[5]

## III.     Legal Standards and Analytical Framework

Under the Social Security Act, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."[6] An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[7]  The Secretary has established a five-step sequential evaluation process to determine whether a claimant is disabled.[8]  If the ALJ determines the claimant is disabled or not disabled at any step along the

---

[3]*See White v. Massanari*, 271 F.3d 1256, 1257 (10th Cir. 2001) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994)).

[4]*Id*. (quoting *Castellano*, 26 F.3d at 1028).

[5]*Id.*

[6]42 U.S.C. § 423(d)(1)(A); § 416(i); § 1382c(a)(3)(A).

[7]*Id.* § 423(d)(2)(A); § 1382c(a)(3)(B).

[8]*Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1983).

way, the evaluation ends.[9]

Plaintiff does not challenge the ALJ's determination at step one that Plaintiff has not engaged in substantial gainful activity[10] since March 15, 2008, the alleged onset date.  Nor does Plaintiff challenge the ALJ's determination at step two that Plaintiff has medically "severe" impairments: diabetes; degenerative disc disease of the lumbar spine; degenerative disease of the knees and right foot; and obesity.  But Plaintiff challenges the ALJ's determinations at steps three, four and five.

## IV.     Discussion

Plaintiff challenges the ALJ's determination at step 3 that Plaintiff's diabetes did not meet listing 9.08 and that Plaintiff's degenerative disc disease did not meet listing 1.04.  Plaintiff also challenges the ALJ's determination of her Residual Functional Capacity ("RFC") at step 4, that Plaintiff is able to perform the full range of sedentary work, and specifically challenges the ALJ's determination that Plaintiff's allegations of disabling limitations were not fully credible, and the ALJ's evaluation of the medical opinion evidence and third party statements.  Plaintiff further argues that the ALJ did not properly consider the impact of her obesity on her ability to work.  Plaintiff also challenges the ALJ's determination at step 4 that Plaintiff could perform past relevant work as a counselor.  Finally, Plaintiff challenges the ALJ's determination at step 5 that Plaintiff could perform work that existed in significant numbers in the national economy. Specifically, Plaintiff argues that her nonexertional impairments precluded reliance upon the Medical-Vocational Guidelines, and further that the ALJ should have obtained the testimony of a

---

[9]*Id.*

[10]*See Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

vocational expert.  The Court address each of these issues in turn.

**A.      Step Three**

**1.      Listing 9.08 (Diabetes Mellitus)**

Plaintiff claims the ALJ erred in finding that her impairments do not meet or equal listing 9.08 for diabetes mellitus.  Plaintiff bears the burden of proving that her impairments meet or equal a listed impairment.[11]  Although the ALJ has the duty to identify the relevant listings and discuss the evidence pertaining to those listings, the burden of proof is still on the claimant to show that he or she meets or equals a listed impairment.[12]  To meet a listing, a claimant must have an impairment that satisfies all of the specified medical criteria for the listing.[13]  An impairment that manifests only some of the criteria, no matter how severely, does not qualify.[14]  If the claimant has an impairment that is described in the listings, but does not exhibit one or more of the findings specified in the listing, or one or more of the findings is not as severe as specified in the particular listing, the claimant must establish other impairment related findings that are at least of equal medical significance to the required criteria.[15]

In order to meet listing 9.08, Plaintiff must show that she has diabetes mellitus, with either neuropathy, acidosis or retinitis proliferans.[16]  The ALJ found that although Plaintiff was

---

[11]*See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Nielson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993).

[12]*See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

[13]*Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

[14]*Id.*

[15]*See* 20 C.F.R. §§ 416.926, 404.1526.

[16] *See* 20 C.F.R. pt. 4, subpt. P., app. 1, § 9.08.

on medication for diabetes, she did not have neuropathy, acidosis or retinitis proliferans that met the listing, and that there was no evidence of end organ damage, recurrent ketosis or retinal changes.  Plaintiff argues that the ALJ erred in failing to consider her testimony that because of diabetes she has neuropathy of the upper and lower extremities with bilateral hand pain, a limited ability to grasp, an inability to operate a keyboard, and an inability to write for extended periods of time.  But the ALJ expressly acknowledged Plaintiff's testimony about neuropathy in her hands and feet, and also noted that an EMG in June 2009 revealed "some demylinating peripheral polyneuropathy, but no evidence of carpal tunnel syndrome or ulnar neuropathy."[17] Plaintiff's argument that the ALJ ignored the results of this EMG is unavailing.  Moreover, while acknowledging Plaintiff's testimony about neuropathy, as well as the above-cited notations in the medical record, the ALJ specifically found that Plaintiff did not have neuropathy that met the listing.  Listing 9.08 requires more than neuropathy.  It requires: "Neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station."[18]

Plaintiff further argues that the state agency medical consultant's opinion was rendered before she had the EMG in June 2009, and thus it did not consider the clinical finding of neuropathy in the EMG.  But the ALJ did consider and discuss the EMG.  And, the ALJ found, and this Court's *de novo* review confirms, that there is no medical evidence that Plaintiff's neuropathy manifested in significant and persistent disorganization of motor function in two extremities, as required by the listing.  On the contrary, as the ALJ noted, a physical exam in

---

[17]Doc. 10-2, R. at 18.

[18]20 C.F.R. pt. 4, subpt. P., app. 1, § 9.08.

July 2008 found that Plaintiff had a wide based gait and stable station, without motor deficit. Plaintiff's dexterity was preserved and she had 75 pounds of grip strength in her right hand and 50 pounds of grip strength in her left hand.  And a neurological examination in October 2009, three months after the EMG, showed no sensory or motor deficits, and further showed that Plaintiff had a normal range of motion as well as normal strength in all extremities.  Thus, the medical evidence did not establish that Plaintiff met the listing.

Plaintiff urges that her testimony about her neuropathy and motor deficits evidenced that she met or equaled the listing.  But, a claimant has the burden of demonstrating through medical evidence that her impairment meets all of the medical criteria in a particular listing.[19]  Alternatively, if a claimant seeks to prove that her impairment is equivalent to the listing, "he must present medical findings equal in severity to all the criteria for the one most similar listed impairment."[20]  Plaintiff did not meet her burden of proof in relying upon her own testimony.

### 2.    Listing 1.04 (Degenerative Disc Disease)

Plaintiff claims the ALJ erred in finding that her impairments do not meet or equal listing 1.04.[21]  In order to meet listing 1.04, Plaintiff must show a disorder of the spine, such as degenerative disc disease or spinal stenosis that results in compromise of a nerve root or the spinal cord, with either: evidence of nerve root compression; spinal arachnoiditis; or lumbar

---

[19]*See Avery v. Astrue*, 313 F. App'x 114, 121-22 (10th Cir. 2009) ("[w]hether the findings for an individual's impairment meet the requirements of an impairment in the listings is usually more a question of medical fact than a question of medical opinion. . . .  In most instances, the requirements of listed impairments are objective, and whether an individual's impairment manifests these requirements is simply a matter of documentation." (quoting SSR. 96-5p, 1996 WL 374183, at *3 (July 2, 1996)).

[20]*Sullivan v. Zebley,* 493 U.S. 521, 531 (1990).

[21]20 C.F.R. pt. 4, subpt. P., app. 1, § 1.04.

spinal stenosis resulting in pseudoclaudification.[22]  The ALJ found that Plaintiff does not have

nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis as required in listing

1.04.[23]  Plaintiff challenges the ALJ's finding that she has no lumbar spinal stenosis, pointing to

the ALJ's finding that an MRI in April 2008 revealed "a loss of signal intensity within L5-S1

disc associated with a small annular tear and broad-based disc bulge with moderate stenosis."[24]

But the presence of stenosis, alone, does not meet the listing.  Rather, the listing requires:

"Lumbar spinal stenosis resulting in pseudoclaudification, established by findings on appropriate

medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and

resulting in inability to ambulate effectively, as defined in 1.00B2b."

Although Plaintiff testified that she has low back pain that radiates to her hips, legs and

feet,[25] pseudoclaudification is not established by findings based upon an MRI or other imaging,

as the listing requires.  And even if Plaintiff's testimony were substantial evidence of

pseudoclaudification, the listing further requires that the stenosis results in an inability to

ambulate effectively.  Section 1.00B2b[26] explains that an

> Inability to ambulate effectively means an extreme limitation of the ability to
> walk, *i.e.*, an impairment(s) that interferes very seriously with the individual's
> ability to independently initiate, sustain or complete activities.  Ineffective
> ambulation is defined generally as having insufficient lower extremity functioning
> (see 1.00J) to permit independent ambulation without the use of a hand-held

---

[22]20 C.F.R. §§ 404, subpt. P., app. 1.

[23]Doc. 10-2, R. at 17.

[24]*Id.* at 18,

[25]According to www.mayoclinic.com/health/presudoclaudification/HQ01278, pseudoclaudification is a result of lumbar spinal stenosis, and typically causes pain and discomfort in the buttocks, thighs, legs and feet with walking or prolonged standing.

[26]20 C.F.R. pt. 4, subpt. P., app. 1, § 1.00B2b.

assistive device(s) that limits the functioning of both upper extremities.[27]

As the ALJ found, and this Court's *de novo* review confirmed, there is neither subjective nor medical evidence that Plaintiff has an extreme limitation in her ability to walk.  Plaintiff testified that she could walk one or two blocks before needing to stop and rest.  No treating medical practitioners made such a finding; in fact, the medical records note in July 2008 that Plaintiff walked with a wide-based gait and that her station was stable. The ALJ found, and this Court agrees upon *de novo* review, that the "medical evidence identifies no clinical signs typically associated with chronic musculoskeletal pain such as muscle atrophy, muscle spasms, neurological deficits, positive straight leg-raising, inflammatory signs, or bowel or bladder dysfunction."[28]  The January 2009 discogram revealed stenosis, but no other clinical findings that meet or equal the listing.  Nor is there any evidence that Plaintiff can ambulate only with a hand-held assistive device that limits the functioning of both arms.  Rather, Plaintiff testified that she *sometimes* uses a cane around the house.  Because Plaintiff has failed her burden of proving, through medical evidence, that her degenerative disc disease and/or stenosis meet or equal all the requirements of the listing,[29] the ALJ properly found that Plaintiff was not disabled at step three.

### 3.     Consideration of Obesity

Plaintiff also contends that while the ALJ found that her obesity was a severe impairment at step 2, at step 3 the ALJ did not properly consider the effect of her obesity, in accordance with

---

[27]*Id.*

[28]Doc. 10-2, R. at 20.

[29]*See Sullivan*, 493 U.S. at 530; *Kent v. Chater*, 74 F.3d 1249 (table), 1996 WL 15511, at *2 (10th Cir. Jan. 16, 1996) (rejecting argument that claimant equaled a listed impairment when she had offered no medical opinion that her condition was medically equivalent to a listing.)

SSR 02-1p,[30] and thus failed to properly determine its severity as an impairment and failed to determine the impact of her obesity, in terms of whether she met any listings at step 3.  Yet, the ALJ expressly stated that he had considered all of the evidence,[31] and as  the Tenth Circuit has noted, where the ALJ states that he has considered all the evidence, "'our general practice . . . is to take a lower tribunal at its word when it declares that it has considered a matter.'"[32] Moreover, from the ALJ's references to the evidence, it is clear that he did in fact consider all of the evidence in this case, including the evidence concerning Plaintiff's obesity.

It is also clear that the ALJ considered and followed the regulation governing the evaluation of obesity.  First, the ALJ found that Plaintiff was obese, with a height of 5'7" and weight of 266.8 pounds.[33]  Next, the ALJ referenced and construed SSR 02-1P[34] in his decision, correctly noting that the regulation provides that obesity by itself will be found to be medically equivalent to a listed impairment, if the obesity causes the same functional limitations as another impairment, such as impairments in the musculoskeletal, respiratory or cardiovascular systems.[35] The ALJ further correctly noted that the regulation also allows for a determination that obesity, in combination with another impairment, can result in signs, symptoms or laboratory findings that are of equal medical significance to one of the listings.[36]  The ALJ properly followed the

---

[30]SSR 02-1P, 2000 WL 628049 (Sept. 12, 2002).

[31]Doc. 10-2, R. at 17.

[32]*Flaherty v. Astrue.*, 515 F.3d 1067, 1071 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)).

[33]Doc. 10-2, R. at 18.

[34]SSR 02-1P, 2000 WL 628049 (Sept. 12, 2002).

[35]Doc. 10-2, R. at 17.

[36]*Id.*

directives of SSR 02-1P, to consider the preface of the musculoskeletal listing for guidance about the potential effects obesity has in causing or contributing to impairments in that body system.[37]  Listing 1.00B2[38] provides that for musculoskeletal impairments, the key consideration is whether there is a loss of function, which "is defined as the inability to ambulate effectively on a sustained basis for any reason."[39]  The ALJ referenced both objective medical evidence in the record, as well as the reports of daily activities submitted by Plaintiff and third parties in finding no extreme limitation in walking, or in performing other motor skills.  In so doing, the ALJ properly considered Plaintiff's obesity, in the context of whether it alone, or in combination her other functional limitations met or equaled the listing for 1.04.[40]

Similarly, it is clear that the ALJ properly considered Plaintiff's obesity in terms of its effect in combination with her diabetes.  The ALJ expressly found that although Plaintiff has diabetes, she does not have neuropathy resulting in the impaired motor functioning required by the listing.  The ALJ also found that Plaintiff did not have retinitis; and that although she has some numbness in her fingertips and feet, there is no evidence of end organ damage.[41]  In short, the ALJ properly considered Plaintiff's obesity, focusing on whether there was evidence of the requisite effects on motor functioning and ability to ambulate.  There was not.  For these reasons, the Court agrees with the ALJ's analysis and conclusion that Plaintiff's obesity did not equal or meet a listing, solely or in combination with other impairments.

---

[37] 20 C.F.R. §§ 404, subpt. P., app. 1.

[38] 20 C.F.R. pt. 4,  subpt. P., app. 1, § 1.00B2b.

[39] *Id.*

[40] 20 C.F.R. pt. 4,  subpt. P., app. 1, § 1.04.

[41] Doc. 10-2, R. at 17.

**B.      Step Four—RFC to Perform Full Range of Sedentary Work**

At step four, an "'ALJ must evaluate a claimant's physical and mental [residual functional capacity ("RFC")].'"[42]  The RFC represents "the most that the claimant can still do despite her limitations, and must include all of the claimant's medically determinable impairments."[43]  The ALJ is responsible for assessing a claimant's RFC considering all the relevant evidence, including the claimant's description of limitations, the medical evidence, and observations of physicians and others.[44]

At step four, the ALJ found that Plaintiff has the RFC to perform the full range of sedentary work.  Plaintiff challenges the ALJ's RFC determination in several respects.  First, Plaintiff argues that the ALJ improperly discredited her testimony of disabling limitations and improperly discounted the statements of Plaintiff's sister and mother and failed to account for all of her impairments.  Plaintiff further claims that the ALJ's RFC determination was inconsistent with the opinion of the state agency medical consultant.  Finally, Plaintiff argues that the ALJ failed to consider the effect of her obesity on her RFC.  The Court addresses each of these arguments in turn.

**1.      Determination of credibility of Plaintiff's testimony and statements of third parties regarding limitations**

As the Tenth Circuit has explained, "[c]redibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by

---

[42]*DeWitt v. Astrue*, 381 F. App'x 782, 784 (10th Cir. 2010) (quoting *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008)); SSR 96-8p, 1996 WL 374184, at *1–*2 (July 2, 1996).

[43]*DeWitt*, 381 F. App'x at 784 (quotation and citations omitted).

[44]*See* 20 C.F.R. § 416.945.

11

substantial evidence."[45]  Here, the ALJ acknowledged Plaintiff's testimony and stated that he had

"considered all of the symptoms and the extent to which these symptoms can reasonably be

accepted as consistent with the objective medical evidence," referencing a number of sections of

the Social Security Act and its regulations.[46]  The ALJ expressly discussed the requirements of

SSR 96-7P,[47] that the Commissioner perform a two step evaluation, first determining whether

there is an underlying medically determinable physical or mental impairment that could

reasonably be expected to produce the individual's symptoms; and then, taking into the

consideration the entire case record, evaluating the intensity, persistence, and functionally

limiting effects of the symptoms to determine the extent to which the symptoms affect the

individual's ability to do basic work activities.[48]  The ALJ further acknowledged the requirement

that where the claimant's claimed symptoms are not substantiated by objective medical evidence,

the ALJ must make a finding on the credibility of the statements, based on consideration of the

entire case record, and that findings as to credibility should be closely and affirmatively linked to

substantial evidence.[49]

 Plaintiff argues that the ALJ erred in rejecting her testimony about her limitations in

sitting, walking or standing, as well as her limitations in use of her hands.  But, the Court finds

that the ALJ properly determined, based on the objective medical evidence and all other

---

[45]*Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).

[46]Doc. 10-2, R. at 17 (citing 20 CFR §§ 404.1529, 416.929; SSR 96-4p, 1996 WL 374187 (July 2, 1996); SSR 96-7p, 1996 WL 374186 (July 2, 1996)).

[47]SSR 96-7P, 1996 WL 374186 ( July 2, 1996).

[48]*Id.*; *Jones v. Astrue,* 500 F. Supp. 2d 1277, 1288–89. (D. Kan. 2007).

[49]*Jones*, 500 F. Supp. 2d at 1288-89.

evidence, including Plaintiff's testimony and the third party reports, that Plaintiff's degenerative

disc disease and diabetes could not reasonably be expected to produce pain and the other

complained of symptoms with the intensity, persistence and functional limitations reported by

Plaintiff.

With respect to Plaintiff's complaints of lower back pain, as well as bilateral feet burning

with stinging and weakness causing difficulty with sitting, standing or walking, the ALJ first

reviewed the medical evidence and found that it could not reasonably be expected to produce the

symptoms to the degree claimed.  After sustaining an injury to her back in April 2008, Plaintiff

had an MRI which revealed a loss of signal intensity within the L5-SI disc with a small annular

tear and broad-based disc bulge with moderate stenosis.  In July 2008, upon examination, it was

noted that Plaintiff was experiencing pain with lumbar region range of motion, but had some

relief with lumbar stretching.  Plaintiff's treating physician, Dr. Ipsen, ordered physical therapy

and noted that if that did not work, they would next try an epidural steroid.  Plaintiff returned in

September 2008, and reported that the physical therapy had not helped for she had constant

lower back pain and that standing, sitting or walking for very long caused her pain to increase.

She also complained of needling pan in her hip and thigh, as well as calf area.  In October 2008,

the doctor gave Plaintiff an injection for the pain.  Plaintiff further advised that she wanted to

skip conservative treatment and go straight to operative intervention.  To that end, the doctor

ordered a discogram, which Plaintiff underwent in January 2009, and which revealed evidence of

L5-S1 degenerative disc disease with stenosis.

By March of 2009, Plaintiff showed improvement.  Dr. Ipsen noted that Plaintiff had full

range of motion with flexion and extension of the lumbar spine, although this increased the pain

in her back.  But, Dr. Ipsen further noted that Plaintiff had full muscle strength, and that the

distal neurovascular showed no problems.  In April 2009, Dr. Andrew noted that Plaintiff was

"doing quite well," and that her lower back pain was only intermittent.  In April 2009, another

physician, Dr. Reeves, opined that pain in Plaintiff's knee was related to her disc disease, and he

suggested medication change, physical therapy or epidural injections.  But Plaintiff refused.  In

September, October and December 2009, a musculoskeletal examination found no sensory or

motor deficits, and found that Plaintiff had a normal range of motion with no deformity, and that

she had normal muscle strength in all extremities.  Thus, throughout 2009, Plaintiff was showing

some improvement, and in any case was not exhibiting clinical signs supporting the degree of

pain of which she complains.

Plaintiff had advised her doctor in October 2008 that she wanted operative intervention.

The ALJ noted that although Plaintiff was scheduled for fusion surgery, she apparently never

had the surgery.  Plaintiff does not challenge this finding of the ALJ, and this Court found no

record that Plaintiff underwent surgery, other than a cryptic reference in the treatment note of Dr.

Marji on June 7, 2010, [50] noting that Plaintiff had back surgery on March 16, 2010.  Dr. Marji is

a cardiovascular specialist, so this information was something that Plaintiff apparently reported

to him, since he did not treat her for her musculoskeletal issues.

To be sure, the medical evidence establishes that the disc disease caused some pain.  But

there was no medical evidence of clinical signs typically associated with chronic back pain, such

as muscle atrophy, muscle spasms, neurological deficits, positive straight leg-raising,

inflammation, bowel or bladder dysfunction.  The fact that Plaintiff consistently exhibited no

---

[50]Doc. 10-14, R. at 802.

motor deficits, no problems with range of motion, deformity or muscle strength, indicates that
Plaintiff's complaints concerning the severity of her pain are not credible.  Further, the fact that
none of Plaintiff's treating physicians stated or implied that she was disabled or seriously
incapacitated suggests that her subjective complaints are not credible.  Moreover, the fact that
Plaintiff rejected suggestions that she try a medication change, physical therapy, epidural
injections, and ultimately, surgery, is indicative that she overstated the intensity and persistence
of her pain.  Indeed, in evaluating credibility, the ALJ must consider the levels of medication and
their effectiveness, the extent of medical or non-medical attempts to obtain relief, the frequency
of the medical contacts and the nature of the daily activities.[51]  The ALJ as well can rely upon
subjective measures of credibility, the motivation of and relationship between the claimant and
other witnesses, and the consistency or compatibility of non-medical testimony with objective
medical evidence.[52]

     The ALJ also considered the nature of Plaintiff's daily activities in discounting the
intensity and persistence of her claimed pain and symptoms.  The ALJ acknowledged Plaintiff's
testimony that she had difficulty standing, sitting or walking, and that she was only able to do an
activity for 5 to 10 minutes.  But the ALJ also acknowledged that Plaintiff's mother and sister
reported that she could walk one to two blocks, and was able to drive and do light grocery
shopping, as well as lift ten pounds.  And, the ALJ properly compared Plaintiff's subjective
complaints and the reports of her family members with his own observations at the hearing, that
Plaintiff sat comfortably for 15 to 20 minutes without complaint.  This observation, coupled with

---

[51]*See Luna v. Bowen*, 834 F.2d 161, 165–66 (10th Cir. 1987).

[52]*Thompson v. Sullivan,* 987 F.2d 1482, 1488-89 (10th Cir. 1993) (citing *Luna,* 834 F.2d at 165-66).

Plaintiff's admission that she watched television or read for long periods of time, was properly considered by the ALJ as discrediting of Plaintiff's testimony about her difficulty in standing, sitting or walking.

Similarly, with respect to Plaintiff's complaints about bilateral hand pain, burning, stinging, swelling, weakness and numbness, the ALJ reviewed the medical evidence and found it could not reasonably be accepted as consistent with the medical evidence.  In April 2008, Plaintiff complained that her neuropathic pain had increased, so Dr. Andrew increased the dosage of her pain medication.  But in October 2008, Dr. Andrew noted that Plaintiff described her neuropathy as stable, and that her pain medication was controlling the neuropathic pain, such that he continued her on the same dosage of medication.  And, an EMG in June 2009 revealed no evidence of carpal tunnel syndrome or ulnar neuropathy.  This medical evidence was inconsistent with Plaintiff's testimony that she had trouble grasping objects, writing for an extended time, or using a keyboard.  Plaintiff's testimony was also inconsistent with the reports of her mother and sister that she could do light housework, drive and do light grocery shopping, as well as lift 10 pounds.  The ALJ may discredit a claimant's self-reported limitations if they are inconsistent with the evidence in the record.[53]  Accordingly, the Court finds that the ALJ did not err in assessing Plaintiff's credibility.  And, in so doing, the ALJ properly considered all of Plaintiff's limitations, including those relating to her diabetes.

### 2.    Opinion of State Medical Agency Consultant

Plaintiff claims that there is not substantial medical evidence supporting the ALJ's RFC

---

[53]*See* 20 C.F.R. § 416.929; *Luna*, 834 F.2d at 165–66.

determination that Plaintiff can perform the full range of sedentary work activities.[54]  Plaintiff's argument that the ALJ's RFC determination must be fully supported by a medical opinion is inapposite.  It is the duty of the ALJ to determine a claimant's RFC based on all of the evidence, including the medical evidence, and need not rely entirely on a particular physician's opinion.[55] The ALJ's decision properly discusses the evidence at length, including the objective medical evidence, the reports of third parties, Plaintiff's testimony, the state agency medical consultant's examination and findings, and Plaintiff's report of daily activities.[56]

In this case, Plaintiff claims the ALJ erred in not "adopting" the limitations opined by the state agency medical consultant.  But the ALJ noted[57] that the consultant opined that Plaintiff retained the ability to perform a range of light to sedentary activities.[58]  In one respect, the ALJ's RFC assessment was more limiting and more favorable to Plaintiff in that he found that Plaintiff could perform the full range of sedentary activities, not light to sedentary activities.  The regulations define sedentary work as requiring primarily sitting for approximately six hours of an eight-hour workday, occasionally lifting ten pounds and being able to occasionally walk or stand for up to two hours of an eight-hour workday.[59]  In contrast, light work requires that while sitting, the person be able to do some pushing and pulling of arms and legs, and be able to walk and/or stand for up to six hours of an eight-hour workday, as well as being able to occasionally lift 20

---

[54]Doc. 10-2, R. at 17.

[55]*See* 20 C.F.R. §§ 404.1546, 416.946; SSR 96-5P, 1996 WL 374183, at *2 (July 2, 1996).

[56]Doc. 10-2, R. at 17–20.

[57]*Id.* at 20.

[58]Doc. 10-12, R. at 652–59.

[59]20 C.F.R. §§ 404.1567(a), 416.967(a).

pounds and frequently lift ten pounds.[60]  In complaining that the ALJ's RFC assessment did not

adopt the more adverse RFC opinion of the state agency medical consultant, Plaintiff fails to

show that any such error by the ALJ harmed or prejudiced Plaintiff.[61]

Moreover, Plaintiff presents an inconsistent argument in complaining that the state

agency medical consultant's opinion was rendered before she had an EMG that revealed

neuropathy and a discogram that revealed some spinal stenosis.  Yet, the ALJ took these clinical

findings into consideration, and clearly factored this evidence in to his opinion that Plaintiff was

limited to sedentary work.  The ALJ also considered the reports of Plaintiff and her family, that

she engaged in sedentary activities, including long periods of reading and television, but was

able to walk 1 to 2 blocks, drive, go to church, shop and perform light household chores, all

indicative of her ability to do a limited amount of standing and walking.  The fact that the ALJ

considered additional evidence not available to the consulting physicians demonstrates that the

ALJ properly considered all of the medical evidence, as well as non-medical evidence and did

not rely exclusively upon the opinion of the consulting physicians.

While the ALJ found that Plaintiff could perform only sedentary work, and no light work,

the ALJ did not incorporate into his RFC the state agency medical consultant's opinion that

Plaintiff had certain non-exertional limitations; that Plaintiff could occasionally climb, kneel or

reach overhead, but never crouch or crawl; and that Plaintiff should avoid moderate exposure to

---

[60]20 C.F.R. §§ 404.1567(b), 416.967(b).

[61]*See St. Anthony Hosp. v. U.S. Dep't of Health & Human Servs.*, 309 F.3d 680, 691 (10th Cir. 2002)
(explaining that the party challenging the action below bears the burden of establishing that the error prejudiced that
party).

vibration.[62]  The ALJ's decision is silent on these postural and environmental limitations.  Even if the ALJ committed error in not including these non-exertional limitations, Plaintiff fails to show how such error harmed or prejudiced her.  At step four, as discussed below, the ALJ found that Plaintiff could perform her past relevant work as a counselor.  Plaintiff reported on her Work History Report that her job as a counselor did not require any climbing, kneeling, crouching or crawling, and required only 30 to 40 minutes of reaching a day.[63]  Moreover, during the lower level determination, a vocational specialist had opined that Plaintiff could perform her past relevant work as a counselor based on the state agency medical consultant's RFC opinion, which included these non-exertional limitations.  Furthermore, the ALJ properly found, as discussed below, that Plaintiff could also perform other work in the national economy.  And, even if Plaintiff had limitations in climbing, crawling, kneeling and crouching and reaching, those limitations would not have a significant impact on the base of sedentary jobs.[64]  Nor would an environmental limitation to avoid moderate exposure to vibration in the workplace have a significant impact on the base of sedentary jobs.[65]

### 3.      Obesity

Plaintiff also contends that the ALJ failed to take her obesity into consideration when determining her RFC.  As discussed above, the ALJ's decision evidences that he was aware of, and took her obesity into consideration at step 3, when determining if any of her impairments

---

[62]Doc. 10-12, R. at 654-56.

[63]Doc. 10-6, R. at 172.

[64]*See* SSR 85-15, 1985 WL 56857 (1985).

[65]*Id.*

were disabling.  With respect to step four, although the ALJ did not specifically discuss Plaintiff's obesity, the Court finds no error.  For Plaintiff fails to point to any evidence in the record showing that her obesity caused any specific limitations beyond those included in the ALJ's RFC determination.[66]  In fact, Plaintiff did not allege any limitations from obesity at the ALJ hearing.[67]  The ALJ properly considered all of Plaintiff's impairments, including her obesity, in concluding that she could perform sedentary activities.

### C.   Step Four—Substantial Evidence Supports Finding that Plaintiff Could Perform Past Relevant Work.

"If the claimant's RFC permits him to perform his prior work, benefits are denied."[68]  At step four, the ALJ determined that Plaintiff was capable of performing her past relevant work as a counselor.[69]  Plaintiff argues that her past work as a counselor does not qualify as "past relevant work" because she did not perform the job long enough to learn the required skills.  For past work to be relevant, it must have been performed within the past fifteen years, have been performed long enough for the plaintiff to have learned the skills required of the job, and have been performed at the level of substantial gainful activity.[70]  Plaintiff argues that according to the Specific Vocational Preparation ("SVP") of 7 and job descriptions DOR 045.107-010, she must have performed the counselor work for more than two years, and up to four years to gain the

---

[66]*See Fields v. Barnhart*, 83 F. App'x 993, 997 (10th Cir. 2003) (noting plaintiff failed to cite to any evidence in the record showing that her obesity affected her ability to engage in basic work activities.)

[67]*Briggs v. Astrue*, 221 F. App'x 767, 770-71 (10th Cir. 2007) (noting plaintiff did not testify that his weight contributed to his inability to engage in activities in any way).

[68]*Bowen v. City of New York*, 476 U.S. 467, 471 (1986).

[69]Doc. 10-2, R. at 20.

[70]SSR 82-62, ;1982 WL 31386, *1-2 (1982); 20 C.F.R. §§ 404.1565, 416.965.

requisite and necessary techniques, knowledge and skills.  In Plaintiff's Brief she acknowledged that she performed the counselor work "from some time in 2002 until March 2005, and not the prerequisite 4 years enunciated by the DOT."  This argument is facially specious, for as Plaintiff acknowledged, she must have performed the work for a minimum of two years.  No matter when Plaintiff commenced this position in 2002, she would have been in the position more than two years by March 2005.  Furthermore, the evidence shows that Plaintiff earned a college degree in psychology in 2002, around the same time she commenced work as counselor, demonstrating that she had training and education in the field even before her more than two-year stint in the counselor position.

Moreover, the ALJ properly relied upon the vocational assessment performed at the lower level,[71] in which the vocational specialist found that the SVP for the job of counselor had been met.  Accordingly, there was substantial evidence in the record supporting the ALJ's conclusion that Plaintiff could perform her past relevant work as a counselor.

### D.   Step Five—Substantial Evidence Supports Determination that Plaintiff Could Perform Work that Existed in Significant Numbers in the National Economy.

While the ALJ found at step four that Plaintiff was not disabled, he continued his analysis at step five, and determined that Plaintiff could perform a significant number of other sedentary jobs that existed in the national economy.[72]  At step five the burden is on the Commissioner to

---

[71]*See* 20 C.F.R. §§ 404.1560(b)(2); 416.960(b)(2) ("We may use the services of vocational experts or vocational specialists, or other resources . . . to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity.").

[72]Doc. 10-2, R. at 21.

show that the plaintiff retains the RFC to perform work that exists in the national economy. [73] At step five, the ALJ considers a plaintiff's age, education, work history, RFC, and where appropriate, in conjunction with the Medical-Vocational Guidelines[74] (grids) to determine a plaintiff's ability to perform work that exists in significant numbers in the national economy.[75] The grids contain tables of rules which direct a determination of disabled or not disabled on the basis of a claimant's RFC category, age, education, and work experience.[76]  The grids cannot be used conclusively unless the claimant's characteristics precisely match the criteria of a particular rule.[77]  An ALJ may not rely conclusively on the grids unless he or she finds: (1) that the claimant has no significant nonexertional impairment, (2) that the claimant can do the full range of work at some RFC level on a daily basis; and (3) that the claimant can perform most of the jobs in that RFC level.  Each of these findings must be supported by substantial evidence.[78]

Plaintiff argues that the ALJ erred in applying the Medical-Vocational Guidelines, because she has several non-exertional limitations.  But, as discussed *supra*, the ALJ properly concluded that Plaintiff's RFC did not include any non-exertional limitations.  Thus, the Commissioner's burden at step five was satisfied by the application of the Medical-Vocational Guidelines, since Plaintiff's limitations are exertional in nature and there are no disqualifying

---

[73]*See* C.F.R. §§ 404.1520, 416.920; *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999).

[74]20 C.F.R. pt. 404, subpt. P, app. 2.

[75]*Id.*

[76]*Id.*

[77]*Id.*

[78]*Thompson v. Sullivan*, 987 F.2d 1482, 1487-88 (10th Cir. 1993); SSR 83-10, 1983 WL 31251 (1983) (advising that application of grids not appropriate when there are non-exertional limitations).

medically established nonexertional limitations.[79]  Moreover, even if the ALJ had found that Plaintiff had the postural, manipulative and environmental limitations included in the opinion of the state agency medical consultant, such limitations would not significantly erode the sedentary occupational base.[80]  As discussed above, environmental restrictions and limitations in climbing, crawling, kneeling and crouching do not have a significant impact on the broad world of work; and only a significant limitation in reaching would erode the sedentary occupational base.   Thus, the nonexertional limitations opined by the state agency medical consultant would not preclude the use of the Medical -Vocational Guidelines because the nonexertional limitations did not significantly erode the occupational base.[81]

### E.      Step Five—Application of Medical-Vocational Guidelines and not Relying on a Vocational Expert

Finally, Plaintiff argues that the ALJ erred in failing to use a vocational expert at the hearing, and thus, adjudicating Plaintiff's claim without any vocational expertise.  This, Plaintiff argues, necessitates a remand, if not an outright reversal.  It is unclear whether Plaintiff is challenging the ALJ's findings at step four or step five.  At step four, the ALJ utilized a vocational assessment in determining that Plaintiff could perform her past relevant work as a counselor.[82]  Moreover, at step five, because the ALJ properly relied upon and applied the Medical-Vocational Guidelines, he was not required to obtain the testimony of a vocational

---

[79]*See Heckler v. Campbell*, 461 U.S. 456 (1983).

[80]*See* SSR 85-15, 1985 WL 56857 (1985).

[81]*See Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988).

[82]Doc. 10-2, R. at 20.

expert.  Application of the grid conclusively determined that Plaintiff was not disabled.[83]

## V.      Conclusion

For these reasons, the Court concludes that the ALJ did not err in finding Plaintiff not disabled at steps three, four or five.  Accordingly the decision of the Commissioner will be affirmed.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's decision denying Plaintiff disability benefits is **AFFIRMED.**

**IT IS SO ORDERED.**

**Dated:** **April 2, 2012**

 **S/ Julie A. Robinson_____**
**JULIE A. ROBINSON**
**UNITED STATES DISTRICT JUDGE**

---

[83]*See* 20 C.F.R. §§ 404.1569, 416.969 ("if the findings of fact made about all factors are the same as that rule, we use that rule to decide whether a person is disabled.").